**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CALVIN LEE COFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-4110-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying disability insurance benefits (DIB) under sections

216(i) and 223 of the Social Security Act.  42 U.S.C. §§ 416(i) and 423 (hereinafter the

Act).  Finding error in the administrative law judge's (ALJ's) evaluation of the medical

opinions, the court ORDERS that the Commissioner's decision is REVERSED, and that

judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g)

REMANDING the case for further proceedings consistent with this opinion.

**I.      Background**

Plaintiff applied for DIB on December 28, 2001.  (R. 65-67, 236, 624).  Since that

date, the proceedings on Plaintiff's application have been long and tortuous, involving

four ALJ hearing decisions before two different ALJs (R. 13-19, 233-66, 271-91, 621-36),[1] a remand by the United States District Court for the Eastern District of California pursuant to the fourth sentence of 42 U.S.C. § 405(g) (R. 328-47), a remand by the Appeals Council of the Social Security Administration (SSA) (R. 267-70), and a remand by the United States District Court for the Eastern District of California pursuant to the sixth sentence of 42 U.S.C. § 405(g). (R. 386-88). After proceedings on the first three hearings and a sentence six remand by the United States District Court for the Eastern District of California, Plaintiff appeared again with counsel for a video hearing before ALJ Howard K. Treblin on November 23, 2009. (R. 236, 637). Testimony was taken from Plaintiff and from a vocational expert. (R. 236, 637-65). On February 12, 2010, ALJ Treblin issued his decision on remand. (R. 236-48). Plaintiff filed a "Request for Review of Hearing Decision/Order" with the SSA office in Manhattan, Kansas on March 18, 2010. (R. 620). On October 1, 2010 the Appeals Council notified Plaintiff it had declined to assume jurisdiction over the decision, and the ALJ's decision dated February 12, 2010 became the final decision of the Commissioner. (R. 616-17); see also, 20 C.F.R. § 404.984(b)(2) (2010) (where Plaintiff files exceptions but the Appeals Council declines to assume jurisdiction, the ALJ decision is the final decision of the Commissioner).

---

[1]The court notes that duplicates of many documents appear in the administrative record in this case. Although there are points, such as this, where the court cites duplicate appearances of certain documents, the court will not attempt to cite to every place in the record where a particular document appears.

After the fourth hearing, but before Plaintiff requested Appeals Council review of the fourth decision, Plaintiff moved to Kansas; and before the Council declined to assume jurisdiction, the United States District Court for the Eastern District of California transferred this case to this court.  (Docs. 33, 38).  In accordance with Local Rule 83.7.2 the Commissioner filed the administrative record and the decision on remand with the court on November 5, 2010, Plaintiff filed an amended complaint, and the Commissioner answered.  (Docs. 47, 48, 49).  Thereafter, the court issued a Scheduling Order, Plaintiff filed his Social Security Brief, and the Commissioner filed his Response Brief.  (Docs. 50, 51, 52, 58).  Plaintiff did not file a reply brief, and the case is now ripe for judicial review in accordance with 42 U.S.C. § 405(g).  Because Plaintiff appears pro se before this court, the court construes his filings liberally, and they "must be held to less stringent standards than formal pleadings drafted by lawyers."  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (internal quotations omitted); Van Deelen v. Johnson, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007) (pro se filings are entitled to a solicitous construction).  However, the court will not assume the role of an advocate for the pro se Plaintiff.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1996).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review by a United States District Court of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review

"[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall v. Astrue, 561 F.3d 1048 1052 (10th Cir. 2009); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir.

4

1985) (quoting identical definitions of a disabled individual from both 42 U.S.C.

§§ 423(d)(1) and 1382c(a)(3)(A));  accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity

that he is not only unable to perform his past relevant work, but cannot, considering his

age, education, and work experience, engage in any other substantial gainful work

existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20

C.F.R. § 404.1520 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing

Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be

made at any of the steps that a claimant is or is not disabled, evaluation under a

subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at

1084).  In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether he has a severe

impairment, and whether the severity of his impairment(s) meets or equals the severity of

any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed

impairment, the Commissioner assesses claimant's residual functional capacity

(hereinafter RFC).  20 C.F.R. § 416.920(e).  This assessment is used at both step four and

step five of the sequential process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--

whether claimant can perform his past relevant work, and whether, when considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084).  In

steps one through four the burden is on claimant to prove a disability that prevents

performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006);

accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at

751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the economy

within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir.

1999).

    Plaintiff's Brief presents four allegations of error:  (1) Plaintiff presented sufficient

evidence to support his claim of disability, but the ALJ unfairly made his decision based

upon evidence other than that presented by Plaintiff.  (2) Plaintiff presented evidence that

his disability increased in severity after December 31, 2006 both as a result of

impairments existing on and before that date, and as a result of additional impairments

beginning after that date, but the ALJ refused to consider that evidence because no money

was contributed to Plaintiff's SSA account after 2006.  (3) The ALJ improperly accorded

weight only to the opinions of the agency's medical sources and not to the opinions of

Plaintiff's medical sources.  And, (4) The ALJ improperly credited vocational expert

(VE) testimony in response to the ALJ's hypothetical questions but not in response to

hypothetical questions from Plaintiff's attorney.  (Pl. Br. 1-2).

    Plaintiff wrote a letter to the court in the Eastern District of California dated June

24, 2010 (Doc. 33), filed an amended complaint after the administrative record was filed

6

in this case (Doc. 48), and attached thirty pages of exhibits to his Social Security Brief; each of which was served on the Commissioner. All of this material has been considered by the court to discern the precise contours of Plaintiff's allegations of error. The Commissioner argues that the decision at issue is proper and that substantial evidence supports the ALJ's credibility determination, his evaluation of the medical opinion evidence, and his determination that a significant number of jobs exist in the national economy which Plaintiff can perform. The court will address each of Plaintiff's claims, but first discusses some general issues relevant to judicial review of SSA decisions.

Plaintiff's Brief suggests that all four of the Commissioner's hearing decisions regarding Plaintiff's application for disability are at issue, and that based upon the evidence the court should determine for itself whether Plaintiff is disabled within the meaning of the Act, and order an award of benefits accordingly. Plaintiff's suggestion rests upon an incorrect understanding of judicial review of decisions of the Commissioner. The court's jurisdiction in such review is prescribed by statute and is limited to review of a "final decision" of the Commissioner. Salfi, 422 U.S. at 763. It involves a determination of whether the Commissioner applied the correct legal standard, and whether substantial evidence in the record supports his final decision. Lax, 489 F.3d at 1084. As discussed above, the February 12, 2010 decision is the "final decision" of the Commissioner after remand, and is the only decision over which the court has jurisdiction

to review.[2]  Sims v. Apfel, 530 U.S. 103, 106-107 (2000) (if the Appeals Council denies a request for review, the ALJ's decision becomes the final decision).

Further, the statute provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence , shall be conclusive."  42 U.S.C. § 405(g) (fifth sentence).  Therefore, if the evidence could support two inconsistent conclusions--that of the ALJ, and that of the plaintiff or of the court--the court may not impose its judgment on the Commissioner, but must affirm the decision below.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted).

Finally, whether to remand the case for additional fact-finding or for an immediate calculation and award of benefits is within the discretion of this court.  Ragland v. Shalala, 992 F.2d 1056, 1060 (10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D. Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir. 1987)).  However, the decision to direct an award of benefits should be made only when the administrative record has been fully developed and when substantial and uncontradicted evidence in the record indicates that the claimant is disabled and entitled to benefits.  Gilliland v.

_____

[2]The other ALJ decisions, however, are a part of the record evidence which has been considered by the court in formulating this opinion.

Heckler, 786 F.2d 178, 184, 185 (3rd Cir. 1986).  Nevertheless, the Commissioner is not entitled to adjudicate a case ad infinitum until he correctly applies the proper legal standard and gathers evidence to support his conclusion.  Sisco v. Dep't of Health & Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).

## III.    The ALJ's Consideration of the Evidence

As Plaintiff's Brief implies, it is his burden to present evidence that he has an impairment or impairments which prevent him from performing his past relevant work. Dikeman, 245 F.3d at 1184.  Plaintiff met this burden.  Among other evidence, Plaintiff presented Dr. Smith's "Spinal Impairment Questionnaire" (R. 473-82) (Ex. 11F), and his "Medical Opinion Regarding Physical Capacity for Work" (R. 481-84) (Ex. 12F); Dr. Dolnick's "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (R. 193-96) (Ex. 4F pp. 15-18); and three documents signed by a Registered Physical Therapist, Ida Marchillo--a "Functional Evaluation of Patient in His Home" (R. 465) (Ex. 7F),[3] a "Physical Therapy Evaluation" dated 10/16/2003 (R. 208) (Ex. AC-1), and a statement entitled "Re:  Calvin L. Cofer."  (R. 209) (Ex. AC-1).  And, the ALJ concluded at step four of the evaluation process that Plaintiff was unable to perform any past relevant work through his date last insured.  (R. 246).

---

[3]The "List of Exhibits" identifies this exhibit as a "Medical Report dated 11/17/05 from Unknown" (R. 3B), but the signature is that of Ida Marchillo as presented and identified in (R. 208, 209) (Ex. AC-1).

However, the ALJ did not limit his consideration to evidence provided by Plaintiff, Plaintiff's treating medical sources, or Plaintiff's attorneys.  He also considered the remainder of the record evidence, including (among other evidence):   the report of examination from Dr. Butowski to whom Plaintiff had been referred for a consultative examination by the first ALJ (R. 43-49, 231, 241, 244), the report of a consultative examination performed by Dr. McIntire (R. 242, 244, 461-64), and "Physical Residual Functional Capacity Assessments" performed by state agency physicians.  (R. 244, 143-58).  At step five of the sequential process, the ALJ determined that there are jobs existing in significant numbers in the national economy that Plaintiff could perform before his date last insured, and he concluded that Plaintiff is not disabled within the meaning of the Act.  (R. 246-49).  The ALJ stated he had made his decision "[a]fter careful consideration of all the evidence" (R. 236), made his findings of fact "[a]fter careful consideration of the entire record" (R. 238), assessed RFC "[a]fter careful consideration of the entire record" (R. 239), and made his credibility determination "[a]fter careful consideration of the evidence."  (R. 240).  This is precisely what an ALJ is required to do.

The Act requires that, "In making any determination with respect to whether an individual is under a disability . . . the Commissioner of Social Security shall consider all evidence available in such individual's case record."  42 U.S.C. § 423(d)(5)(B).  The regulations define "evidence" as "anything you or anyone else submits to us or that we obtain that relates to your claim."  20 C.F.R. 404.1512(b).  The Tenth Circuit requires that the record "demonstrate that the ALJ considered all of the evidence."  <u>Clifton v. Chater</u>,

79 F.3d 1007, 1009 (10th Cir. 1996). Therefore, it is not error for the ALJ to make his decision based on more than just the evidence presented by Plaintiff or his doctors or attorneys. As to Plaintiff's implying that the ALJ improperly assessed the relative weight of various pieces of evidence in the record, the Act and the regulations provide that certain evidence must be weighed in certain ways, and the court will address the relative weighing of the evidence where it is appropriate in this opinion when considering Plaintiff's remaining arguments.

## IV. The ALJ's Refusal to Consider Evidence Regarding Increase in the Severity of Plaintiff's Condition After December 31, 2006

In his second allegation of error, Plaintiff argues that the ALJ erroneously refused to consider evidence both that his impairments increased in severity after 2006 and that additional impairments developed after 2006 causing him a greater degree of disability. The Commissioner argues that to be entitled to DIB under Title II of the Act, an individual must show that he became disabled while he was insured for such benefits under the Act, and that Plaintiff's insured status ended on December 31, 2006. The Commissioner is correct.

The ALJ discussed this issue:

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2006 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

11

(R. 236).

As relevant in the case of an individual such as Plaintiff, who was over age 31 at the alleged date of disability onset, the Act provides that a period of disability may begin only in a calendar quarter in which the individual has at least 20 quarters of coverage during the 40-quarter period ending with the quarter during which the date of onset occurred.  42 U.S.C. §§ 416(i)(3)(B), 423(c)(1)(B).  The Act defines a "quarter of coverage" as a calendar quarter in which an individual receives wages or self-employment income which equals the amount required to qualify for a quarter of coverage as determined by the Commissioner for that calendar year.  42 U.S.C. § 413(a)(2)(A).  The record reveals that Plaintiff earned a "quarter of coverage" continuously for each calendar quarter beginning in the fourth quarter of 1973 through the fourth quarter of 2001.  (R. 425-26).  Plaintiff stated in his application that his disability began on November 26, 2001[4] (R. 65) and he testified that he last worked at the "end of November 2001."  (R. 642).  He does not argue that he earned any quarters of coverage after the fourth quarter of 2001.

The last quarter in which Plaintiff had at least 20 quarters of coverage during the 40-quarter period ending with that quarter, was the fourth quarter of 2006.  Plaintiff's last 20 quarters of coverage were the 20 quarters in 1997 through 2001, and the last time he

---

[4]The ALJ stated, "The claimant is alleging disability since November 23, 2001." (R. 236, 238).  This is a typographical error which the Commissioner must correct on remand, as Plaintiff's application states, "I became unable to work because of my disabling condition on November 26, 2001."  (R. 65).

had 20 quarters of coverage within the previous 40 quarters was in the 40-quarter period from 1997 through 2006.  As the ALJ found, Plaintiff's date last insured for disability insurance benefits pursuant to Title II of the Social Security Act was December 31, 2006.

If Plaintiff is to receive DIB, he must show that he was disabled within the meaning of the Act while he was insured for such benefits--before December 31, 2006. Consequently, if Plaintiff's impairments worsened after December 31, 2006, or if he developed additional impairments after December 31, 2006, those facts are irrelevant to whether he is disabled and eligible for DIB under Title II of the Act.  On the other hand, Title XVI of the Social Security Act provides for supplemental security income (SSI) payments to individuals who are disabled within the meaning of the Act and meet certain additional requirements relating to income and resources.  42 U.S.C. § 1381a, 1382c(a)(3)(A).  At issue here, Plaintiff applied for DIB, but did not at the same time apply for SSI.  (R. 65-67).  Later, Plaintiff apparently filed Title XVI applications in May 2009, and on March 18, 2010, but those applications were not made a part of the proceedings before ALJ Treblin.  (R. 618-19).  Therefore, whether Plaintiff was entitled to SSI payments at any time after December 31, 2006 was not at issue before the ALJ in his decision, and is not at issue before this court in its review of that decision.

In the decision at issue, the ALJ recognized that the record contained evidence regarding Plaintiff's condition after December 31, 2006, and he included testimony regarding Plaintiff's condition after that date in his summary of Plaintiff's testimony.  (R. 240, 246).  However, as Plaintiff recognized, the ALJ did not consider that evidence in

13

evaluating Plaintiff's application for DIB, and limited his consideration and findings to evidence relevant to disability during the time period from Plaintiff's alleged onset date, November 26, 2001 through his date last insured, December 31, 2006.  That is not error.

## V.      The ALJ's Weighing of the Medical Source Opinions

Plaintiff claims that in weighing the medical source opinions, the ALJ improperly accorded weight only to the opinions of the agency's medical sources and not to the opinions of Plaintiff's medical sources.  In his Amended Complaint, Plaintiff argues that the agency did not take all of the medical evidence into account, and alleges specifically that, "I had a Physical Therapist dispute the Chiropractor doctor the SS sent me to in which he examined me but was not the specialist I was supposed to see.  Their report had many discrepancies and was not signed by the one who did my examination."  (Doc. 48, pp.2-3).  With his brief, Plaintiff included copies of all of Ms. Marchillo's reports, a report completed by Dr. Renwick on November 11, 2009, Dr. Smith's Spinal Impairment Questionnaire and portions of Dr. Smith's Opinion Regarding Ability to Do Work-Related Activities, part of Dr. Han's report dated April 14, 2002, and Dr. Dolnick's Medical Assessment of Ability to Do Work-Related Activities (Physical), (Pl. Br., Exs. 12a-16e) (all further citation to these exhibits will be to the point at which they appear in the administrative record), thereby raising the inference that he believes these reports should have been accorded greater weight in the ALJ's decision.

The Commissioner presents the counterpoint to most of Plaintiff's claims of error in weighing the medical source opinions, arguing that substantial evidence supports the

ALJ's weighing of the medical opinion evidence.  He argues that the ALJ properly discounted the opinions of Dr. Smith; that the opinions of the State agency consultants and Dr. Han, Dr. Butowski, Dr. McIntire, and Dr. Dolnick are inconsistent with the opinions of Dr. Smith; that these doctors' opinions support the ALJ's RFC assessment; and that Plaintiff misunderstands the report of Dr. Dolnick.  He argues that Dr. Renwick's opinion was not a part of the administrative record before the agency and may not be considered by this court except in deciding whether to remand for consideration of the report as new, material evidence, for which there is good cause for Plaintiff's failure to incorporate the evidence before the ALJ; and he argues that in any case Dr. Renwick's opinion relates only to the period after Plaintiff's date last insured on December 31, 2006.  Finally, the Commissioner admits that "the ALJ should have addressed Ms. Marchillo's opinions in his written decision," but that "the ALJ's failure to do so was harmless and did not prejudice Plaintiff in any way."  (Comm'r Br. 18).  He then explains why in his view Ms. Marchillo's reports are worthy of little weight, and the failure to discuss them in the decision did not prejudice Plaintiff.

### A.      The ALJ's Evaluation of the Medical Source Opinions

As the parties agree, the ALJ did not discuss the opinions of Ms. Marchillo or Dr. Renwick.  And, as the Commissioner notes, Dr. Renwick's opinion does not appear in the administrative record.  On pages 8-10 of his decision, the ALJ summarized the reports and opinions of each of the other medical sources.  (R. 243-45).  He summarized the reports of:  Dr. Han, who provided an orthopedic consult for the state agency (R. 163-64,

177-78); Dr. Clancey, a state agency consultant; Dr. Amon, a state agency consultant; Dr. Dolnick, who treated plaintiff at least on March 21, 2001 and July 23, 2002 (R. 192); Dr. Butowski, who provided a consultant evaluation after the first hearing (R. 17, 43-49); Dr. McIntire, who provided a consultant evaluation and a Medical Source Statement of Ability to Do Work-Related Activities (Physical) on July 16, 2005 (R. 461-64, 512-15);[5] and Dr. Smith who completed the Medical Opinion Re: Ability to Do Work-Related Activities, and the Spinal Impairment Questionnaire discussed above, and treated Plaintiff from at least April 20, 2004 through at least August 4, 2006.  (R. 486, 496).

The ALJ reasoned that "reports from multiple medical sources . . . are consistent with the claimant's ability to perform light work . . ..  These reports were given great weight because they are supported by the record and are consistent with the claimant's ability to perform light work."  (R. 243) (citing the opinions of Dr. Han, Dr. Clancey, Dr. Amon, Dr. Dolnick, Dr. Butowski, and Dr. McIntire).  The ALJ acknowledged that a treating source medical opinion may in certain circumstances be entitled to controlling weight and is always entitled to special significance, but thereafter explained why he gave "little evidentiary weight" to Dr. Smith's opinions, and stated the bases for his RFC assessment:

---

[5]The ALJ identified Dr. McIntire's report, stated it was dated "July 15, 2006" (R. 244), but it is actually dated July 16, 2005.  (R. 461).  Moreover, the ALJ identified the Medical Source Statement of Ability to Do Work-Related Activities (Physical) dated July 16, 2005 as "completed by signature illegible," but the date is the same as Dr. McIntire's examination, and comparison of the signatures reveals that the Medical Source Statement was also signed by Dr. McIntire.  Compare (R. 464) with (R. 515).

However, the undersigned, pursuant to 20 CFR § 404.1527 and Social Security Ruling 96-2p, finds no support in the findings reported by Dr. Smith.  The reports primarily summarize the claimant's subjective complaints and diagnoses but do not present objective clinical or laboratory diagnostic findings that support its conclusions.  In fact, examinations performed by Dr. Smith during the period April 2006 through May 2006 were unremarkable and showed no tenderness to palpation over the paraspinous muscles or lumbosacral spine or cervical spine (Exhibits 13F/2 and 13F/4 [(R. 486, 488)]).  Accordingly, the undersigned. gives little evidentiary weight to this opinion which, if otherwise accepted as credible, would indicate that the claimant could not perform any kind of work.

In sum, the above residual functional capacity assessment is supported by the record, when considered as a whole, and especially in light of the paucity of clinical deficit noted upon physical examinations and diagnostic studies, including consistent findings of no need for an assistive device for ambulation, the relative conservative treatment during the period of adjudication, his lack of reported significant adverse side effects from medications, the analgesic medication history which is inconsistent with claimed severity of pain, and the lack of records limiting the claimant's physical activities to a more severe residual functional capacity.  The lack of objective findings following multiple examinations suggests that the claimant exaggerated his symptoms, and therefore was not found to be an entirely credible witness.  In addition, multiple opinions during the period of adjudication were found to be fully consistent with the residual functional capacity (Exhibits 2F/1-8 [(R. 143-50) (Dr. Amon's opinion)]; 2F/9-16 [(R. 151-58) (Dr. Clancey's opinion)]; 3F/2 [(R. 178) (Dr. Han's report)]; 4F/15-18 [(R. 193-96) (Dr. Dolnick's opinion)]; 5F/5 [(R. 203) (Dr. Butowski's opinion)]; 6F/4 [(R. 464) (Dr. McIntire's report)]; and 14F [(R. 512-15) (Dr. McIntire's medical source statement)]), and were given great weight for the reasons cited above.

(R. 245-46).

## B.     Analysis

As the Commissioner argues, Dr. Renwick's report is not contained in the

administrative record, and as such may not be considered by the court except for the

purpose of determining whether remand is necessary for additional evidence to be taken,

17

"but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (sixth sentence). Moreover, the court agrees with the Commissioner that Dr. Renwick's report was issued almost three years after Plaintiff's date last insured for Title II DIB, and is not material to a determination of disability during the period before that date.

As discussed in Section IV of this opinion, to receive DIB Plaintiff must show he became disabled before his date last insured on December 31, 2006. Evidence tending to show disability after that date cannot demonstrate eligibility for benefits under Title II. Therefore Dr. Renwick's report is relevant to the court's determination only if it relates to the severity of Plaintiff's condition before December 31, 2006. Plaintiff points to no such relevance. As the Commissioner argues, Dr. Renwick's report indicates that he began treating Plaintiff in October, 2008, nearly three years after Plaintiff's date last insured, and there is no indication that the opinion applied to any period before December 31, 2006. Therefore, the court finds that Dr. Renwick's opinion is not relevant to the issues before this court, and the case need not be remanded pursuant to sentence six for consideration of additional evidence.

As the ALJ acknowledged, a physician who has treated a patient frequently over an extended period of time (a treating source)[6] is expected to have greater insight into the

---

[6]The regulations define three types of "acceptable medical sources:"
"Treating source:" an "acceptable medical source" who has provided the claimant

patient's medical condition, and his opinion is generally entitled to "particular weight."

Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). The regulations provide that the

Commissioner will accord "controlling weight" to a treating source opinion regarding the

nature and severity of a claimant's impairments if the opinion (1) "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [the] case record." 20 C.F.R.

§ 404.1527(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2010) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting

SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is

also consistent with other substantial evidence in the record. Id. "[I]f the opinion is

deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not

end. Id. A treating source opinion is "still entitled to deference and must be weighed

---

with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R.
§§ 404.1502, 416.902.

　　　"Nontreating source:" an "acceptable medical source" who has examined the
claimant, but never had a treatment relationship. Id.

　　　"Nonexamining source:" an "acceptable medical source" who has not examined
the claimant, but provides a medical opinion. Id.

using all of the factors provided in 20 C.F.R. § 404.1527." Id.  Those factors are:

(1) length of treatment relationship and frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether or not the physician is a specialist in the area upon which an opinion

is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see

also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v.

Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

    After considering the factors, the ALJ must give reasons in the decision for the

weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "When a treating

physician's opinion is inconsistent with other medical evidence, the ALJ's task is to

examine the other physicians' reports 'to see if [they] "outweigh[]" the treating

physician's report, not the other way around.'  Reyes v. Bowen, 845 F.2d 242, 245 (10th

Cir. 1988.  The ALJ must give specific, legitimate reasons for disregarding the treating

physician's opinion that a claimant is disabled.  Frey[ v. Bowen], 816 F.2d [508,] 513

[(10th Cir. 1987)]."  Goatcher, 52 F.3d at 289-90.

    Because Dr. Dolnick and Dr. Smith were treating physicians, their opinions

regarding the nature and severity of Plaintiff's impairments are entitled to deference and

might, in appropriate circumstances, be entitled to controlling weight.  The ALJ did not

specifically determine whether Dr. Dolnick's opinion should be weighed as a "treating source" opinion or determine whether it might be accorded controlling weight, but he purported to give it "great weight" along with the opinions of Drs. Han, Clancey, Amon, Butowski, and McIntire.  Although Plaintiff's argument is not clear, he appears to argue that Dr. Dolnick's opinion limits him to only 1-2 hours each of sitting and standing in a workday and would, consequently, preclude work.  However, the ALJ explained his understanding of Dr. Dolnick's opinion:

> [Dr. Dolnick] reported that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or sit 1-2 hours without interruption in an eight hour workday; occasionally climb, balance, or kneel, but never stoop, crouch, or crawl; frequently reach, handle, or feel, and occasionally push and/or pull.  The claimant was found to need to avoid exposure to moving machinery and vibrations.

(R. 244).  The ALJ's understanding is supported by the record evidence.  Dr. Dolnick reported that Plaintiff can sit and stand one to two hours "At One Time without Interruption."  (R. 194).  Regarding Plaintiff's ability to sit or stand "Total in 8 Hour Workday," Dr. Dolnick did not provide any limitation.  Id.  Immediately following that information, Dr. Dolnick stated, "may need to get up when he is sedentary to stretch his back."  Id.  Therefore, the ALJ drew the natural inference that Dr. Dolnick found no limitations in sitting or standing beyond the limitation to sit or stand only one to two hours at a time, and to intersperse those activities to allow for Plaintiff to stretch his back after he has been sedentary for one to two hours.  This interpretation finds further support from the fact that Dr. Dolnick specifically indicated Plaintiff "Can return to full duties

with NO RESTRICTIONS on 11/24/02." (R. 198) (Caps in original).  Dr. Dolnick's

opinion (potentially a treating source opinion) constitutes other substantial evidence in the

case record which is inconsistent with Dr. Smith's treating source opinion (and vice

versa), and the ALJ was correct not to accord controlling weight to either opinion.

Plaintiff also attached a portion of Dr. Han's opinion to his brief, and thereby

implies that opinion is inconsistent with the RFC assessed by the ALJ but supports Dr.

Smith's opinion that Plaintiff is unable to work.  The court cannot agree with Plaintiff's

implication.  As the ALJ found, Dr. Han's opinion would limit Plaintiff to lifting and

carrying 35 pounds occasionally, and 20 pounds frequently; to stand and walk only

intermittently with no limitations on sitting; and to only intermittent bending, stooping,

kneeling, crouching, crawling, and squatting.  (R. 243-44); see also (R. 178).  This

opinion would allow Plaintiff to perform a broader range of work than the RFC which

was ultimately assessed by the ALJ, and provides no support either for Plaintiff's

argument or for Dr. Smith's opinion.

Nevertheless, the court finds that remand is necessary because the ALJ did not

properly weigh the opinions of the medical sources.  The court finds this is so, not so

much because of what the ALJ discussed in the decision, but what he failed to discuss–the

Physical Therapist's opinions, and Plaintiff's opposition to Dr. Butowski's opinion.  As

summarized above, in his Amended Complaint, Plaintiff argued that "I had a Physical

Therapist dispute the Chiropractor doctor the SS sent me to in which he examined me but

was not the specialist I was supposed to see.  Their report had many discrepancies and

was not signed by the one who did my examination." (Doc. 48, pp.2-3). This argument appears to be based in part upon Ms. Marchillo's statement that the first hearing decision appeared to be "primarily Based [sic] on a chiropractic evaluation on 5/15/03, signed by Nicolas Butowski, M.D. and Compiled [sic] as a comprehensive orthopedic evaluation." (R. 209). Ms. Marchillo concluded that Dr. Butowski's "conclusion is at least partially false," and attached her own evaluation of Plaintiff. (R. 208-09). In that evaluation, dated 10/16/2003, Ms. Marchillo noted that Plaintiff had limited range of motion in the cervical spine and back, "Obvious tightness" in certain muscles, thoracic kyphosis, reduced lumbar curve, positive straight leg raises bilaterally, difficulty changing position, and increase in radiculopathy. (R. 208). She concluded her evaluation by noting:

> The statements of Dr. Dolnick of Kaiser Permanente at Manteca are more realistic of this patient's abilities at this time. [2 hours sit, 2 hours stand, and 2 hours walk]. Even this would be quite difficult for this patient and would probably exacerbate his condition.

(R. 208).

Dr. Butowski's examination and report were completed after the first hearing and before the first decision on Plaintiff's DIB application. (R. 17, 43-47, 199-206, 231). Accordingly, Plaintiff was given the opportunity to respond in writing to Dr. Butowski's report, and he did so. (R. 48-49). Plaintiff alleged eight minor factual errors in Dr. Butowski's report which would have little, if any, impact on the weight that should be accorded Dr. Butowski's opinions, but he also made an allegation which, if credited, would provide a basis to reject or to reduce the weight given Dr. Butowski's opinion:

> The examining doctor was not the original doctor scheduled for the exam of the claimant.  The claimant was called the night before and given a different doctor and appointment time.  <u>The examining doctor did not have any records to review and stated to the claimant that he would have to get the records from the original doctor that had been scheduled to see him</u>.

(R. 48) (emphasis added).

Nowhere did the ALJ discuss Plaintiff's allegation.  Rather, without specific discussion, he merely decided to accord the opinion "great weight" along with the opinions of Drs. Han, Clancey, Amon, Dolnick, and McIntire.  (R. 243-44).  However, Dr. Butowski's report, dated May 15, 2003 suggests that Plaintiff's assertion may be correct, and that the report was prepared without consideration of all of the medical records which were in the record at the time of the report.  In the section entitled "Review of Records," Dr. Butowski's report only discussed a single "note dated May 24, 1999," and "signed by Craig Hope, M.D."  (R. 199).  Dr. Butowski's report states that <u>Dr. Hope's note</u> included a review of "some records, which include an MRI from 1996."  <u>Id.</u> Thus, on its face Dr. Butowski's report rests solely on his one-time examination of Plaintiff in light of a single report completed by Dr. Hope four years earlier, and after Dr. Hope's one-time examination of Plaintiff and review of certain unidentified medical records available to him at that time.

The administrative record at the time of Dr. Butowski's evaluation included several medical records not discussed, or even acknowledged by Dr. Butowski:  (1) Ex. 1F - Medical Records from 6/20/96 to 11/03/01 from, Kaiser/Stockton, which included MRI reports dated 11/03/01 and 7/08/96; (2) Ex. 3F - Dr. Han's report; and (3) Ex. 4F -

24

Social Security Brief presented by Plaintiff's attorney, which included Dr. Hope's report and three medical records prepared by Dr. Dolnick.  The decision does not reveal whether the ALJ was even aware of Plaintiff's objections to Dr. Butowski's report, and certainly does not attempt to explain whether Dr. Butowski actually had available all of the medical evidence, or to explain what weight should be accorded the opinion considering that Dr. Butowski did not even mention (and perhaps did not see or review) most of the available medical evidence.  The court does not expect to see such critical review of every medical report in the record, but in circumstances such as this, where Plaintiff clearly presented this issue by the only means available after Dr. Butowski presented his report, the Commissioner in the decision must address the issue and explain why he nonetheless found Dr. Butowski's opinion worthy of "great weight."  He did not do so, and this is error requiring remand for a proper evaluation of the medical evidence.

Further, as the Commissioner admits, the ALJ erred in failing to address Ms. Marchillo's "other medical source" opinions in the decision, but he argues that the error "was harmless and did not prejudice Plaintiff in any way."  (Comm'r Br. 18).  The Tenth Circuit has explained the application of harmless error review in Social Security cases.

> We have generally recognized the applicability of this principle in the administrative review setting.  See St. Anthony Hosp. v. United States Dep't of Health & Human Servs., 309 F.3d 680, 691 (10th Cir. 2002) (following All Indian Pueblo Council v. United States, 975 F.2d 1437, 1443 (10th Cir. 1992)).  Further, we have specifically applied it in social security disability cases, though not always by name and without settling on a definitive characterization of its precise contours and range of application in this somewhat unique, nonadversarial setting.  For example, this court has held that certain technical errors were "minor enough not to undermine

confidence in the determination of th[e] case," <u>Gay v. Sullivan</u>, 986 F.2d 1336, 1341 n. 3 (10th Cir. 1993); <u>Diaz v. Secretary of Health & Human Servs.</u>, 898 F.2d 774, 777 (10th Cir. 1990), and that an "ALJ's conduct, although improper, d[id] not require reversal" because the procedural impropriety involved had not "altered the evidence before the ALJ," <u>Glass v. Shalala</u>, 43 F.3d 1392, 1396-97 (10th Cir. 1994).  For present purposes, one significant thing this heterogeneous group of cases has in common is that in none of them did this court hold an ALJ's failure to make a dispositive finding of fact harmless on the basis that the missing fact was clearly established in the record, which is the only possible basis for invoking the principle in this case.

Two considerations counsel a cautious, if not skeptical, reception to this idea.  First, if too liberally embraced, it could obscure the important institutional boundary preserved by <u>Drapeau's</u> admonition that courts avoid usurping the administrative tribunal's responsibility to find the facts. Second, to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action recognized in <u>SEC v. Chenery Corp.</u>, 318 U.S. 80, 63 S. Ct. 454, 87 L. Ed. 626 (1943) and its progeny.

With these caveats, it nevertheless may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.

<u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145 (10th Cir. 2004)

Based upon the discussion in <u>Allen</u>, the court cannot agree that the ALJ's failure to address Ms. Marchillo's opinions was harmless.  Such a course would violate both caveats presented in <u>Allen</u>.  First, the court would be required to engage in fact-finding regarding Ms. Marchillo's opinion--contrary to <u>Drapeau's</u> instruction to avoid usurping the Commissioner's fact-finding role.  <u>Drapeau</u>, 255 F.3d at 1214 ("we are not in a

26

position to draw factual conclusions on behalf of the ALJ") (quoting Prince v. Sullivan,

933 F.2d 598, 603 (7th Cir. 1991)).  Second, such a finding would amount to creating

post-hoc rationalizations to explain the Commissioner's treatment of evidence even

though that treatment is not apparent from the Commissioner's decision.  Grogan v.

Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing Allen, 357 F.3d at 1145; and

Chenery Corp., 318 U.S. at 87).  Moreover, even if the caveats of Allen were not

applicable here, there is no indication that the ALJ actually considered Ms. Marchillo's

opinions (correctly or otherwise), and the court cannot confidently say that no reasonable

administrative factfinder, following the correct analysis, could have accepted Ms.

Marchillo's opinions.  Therefore, harmless error may not be assumed here, and remand is

necessary for the Commissioner to properly weigh Ms. Marchillo's "other medical

source" opinion.

On remand, the Commissioner must weigh all of the medical source opinions.  As

the court found above, the treating source opinions are not worthy of controlling weight.

Nonetheless, as treating source opinions they are worthy of deference, and the

Commissioner must weigh all of the opinions based on the regulatory factors for

weighing medical source opinions, and must examine the other opinions to see if they

outweigh the treating source opinions, and if so, must give specific, legitimate reasons for

rejecting the treating source opinions.

Because the Commissioner must properly weigh the medical source opinions on

remand, he will be required to once again assess Plaintiff's RFC and evaluate steps four

and five of the sequential evaluation process.  In such circumstances it is likely the RFC

assessment will change.  Therefore, it would be premature for the court to attempt to

address the hypothetical questions which might be presented to a vocational expert (VE)

on remand, and the court will not now address Plaintiff's fourth allegation of error--that

the ALJ improperly credited VE testimony in response to the ALJ's hypothetical

questions but not in response to hypothetical questions from Plaintiff's attorney.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is

REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42

U.S.C. § 405(g) REMANDING this case for proceedings consistent with this opinion.

Dated this 21st day of July 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**